# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUNTA LIMA, LLC,<br><br>**Plaintiff**,<br><br>v.<br><br>PUNTA LIMA DEVELOPMENT COMPANY, LLC,<br><br>**Defendant**. | **Civil No.** 19-1673 (FAB) |
| PUNTA LIMA WIND FARM, LLC,<br><br>**Plaintiff**,<br><br>v.<br><br>PUNTA LIMA DEVELOPMENT COMPANY, LLC,<br><br>**Defendant**. | **Civil No.** 19-1800 (FAB) |

**OPINION AND ORDER**

Before the Court is plaintiff Punta Lima Wind Farm, LLC ("Wind Farm")'s motion for a temporary restraining order ("TRO") pursuant to Federal Rule of Civil Procedure 65 ("Rule 65"). (Case No. 19-1673, Docket No. 26.) For the reasons set forth below, Wind Farm's motion for injunctive relief is **DENIED**.

I. **Background**

Punta Lima Wind Farm, LLC ("Wind Farm") operates a wind energy facility in Naguabo, Puerto Rico (hereinafter "facility"). (Docket No. 1 at p. 5.) Wind Farm leased property and specialized equipment from defendant Punta Lima Development Company, LLC

("Development Company") and plaintiff Punta Lima, LLC ("Punta Lima"), respectively.

**A. The Lease and Sublease Agreements**

The facility is located on three parcels of land: (1) the Punta Lima Property, (2) the Montida Property, and (3) the Torres-Hoyos property.  Id. at pp. 3—4.

**1. The Punta Lima Property**

Punta Lima Development Company owns a parcel of land in the Municipality of Naguabo.  Id. at p. 3.  Wind Farm leased the property from Development Company on December 21, 2012.  Id.

**2. The Montida Property**

Wind Farm leased the Montida property from the Puerto Rico Land Administration ("PRLA") on June 7, 2011.  Id. Subsequently, Wind Farm assigned all rights, title and interest pursuant to the PRLA lease agreement to Development Company on December 20, 2012. Id. at p. 4.  Subsequently, Development Company subleased the Montida property to Wind Farm.  Id.

**3. The Torres-Hoyos Property**

Iván Torres-Hoyos, Héctor Torres-Hoyos, and Wind Farm executed a lease agreement on September 21, 2011. Id.  Wind Farm assigned all rights, title and interest pursuant to the Torres-Hoyos lease agreement to Development Company on December 19, 2012. Id.  Development Company subleased the Torres-Hoyos property to Wind Farm on December 19, 2012.  Id.  Accordingly, Wind Farm

operates the facility on property either owned by Development Company (*i.e.*, the Punta Lima property) or leased by Development Company (*i.e.*, the Montida and Torres-Hoyos properties). Hurricane María destroyed the facility, prompting Wind Farm to default on the lease and sublease agreements. Id. at p. 8.

### B. The Equipment Agreement

Santander Bank, N.A. ("Santander") and Wind Farm entered into a Facility Lease Agreement on December 28, 2012. Id. at p. 5. Santander leased the following equipment to Wind Farm: wind power generating machines, electrical transmission and communication lines, poles, transformers, energy storage units, crane pads, meteorological towers, and other equipment constituting the facility. Id. Punta Lima and Santander entered into a Contribution, Assignment and Assumption Agreement on August 15, 2013. Id. Santander transferred all rights, title and interest pursuant to the Facility Lease Agreement to Punta Lima. Id.

Wind Farm defaulted on the Facility Lease Agreement. Id. To cure the default, Punta Lima and Wind Farm entered into a Foreclosure Sale Agreement on July 15, 2019. (Docket No. 26 at p. 18.) Consequently, Punta Lima is the sole member of Wind Farm. Id. at p. 26. Despite the foreclosure, Wind Farm owes Punta Lima more than $25,000,000.00. Id. at p. 22.

### C. Subordination Agreement

Development Company and Wind Farm entered into a Subordination Agreement on August 15, 2013. Id. at p. 10. Development Company agreed to the subordination of Wind Farm's payment obligations pursuant to the Punta Lima lease, the Montida sublease, and the Torres-Hoyos sublease in favor of Wind Farm's payment obligations pursuant to the Facility Lease Agreement. Id.

### D. The Punta Lima Litigation

Wind Farm defaulted on the Punta Lima on the lease and sublease agreements. Id. at p. 13. Development Company sent notices of default to Punta Lima, requesting that Punta Lima cure Wind Farm's default within 30 days. Id. According to Development Company, Wind Farm owes the following in outstanding rent: $263,524.00 for the Punta Lima property, $214,032.00 for the Montida property, and $485,442.00 for the Torres-Hoyos property. (Docket No. 26, Ex. 26.) Punta Lima commenced an action against Development Company, arguing that Wind Farm's payment obligations to Development Company are subordinated "in favor of any and all of the obligations of Wind Farm owing to [Punta Lima] under the Facility Lease Agreement" (hereinafter "Punta Lima litigation"). (Case No. 19-1673, Docket No. 7 at p. 7.)

On August 2, 2019, Punta Lima moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. (Docket No. 12.) Punta Lima requests that the Court preclude Development

Company from terminating the Punta Lima lease, the Montida sublease, and the Torres-Hoyos sublease agreements. Id. at p. 1. Development Company purportedly failed to substantiate the sums owed by Wind Farm regarding the lease agreements, concealed "disbursement of proceeds purportedly received by Wind Farm from [a] business interruption [insurance] policy," and prohibited Punta Lima from accessing the facility. Id. at p. 2. The Court ordered Development Company to respond to the preliminary injunction motion no later than September 12, 2019. (Docket No. 18.)

### E. The Wind Farm Litigation

A month after the Punta Lima litigation began, Wind Farm filed a verified complaint against Development Company. (Case No. 19-1800). Wind Farm alleges that Development Company terminated the lease agreements, preventing Wind Farm from accessing the facility. Id. at p. 3. Without access to the facility, Wind Farm cannot comply with Puerto Rico Electric Power Authority ("PREPA") requirements, qualify for the Green Energy Incentives Act tax exemption pursuant to Act No. 83-2010, or receive proceeds from an insurance policy. Id. at p. 2. Moreover, Wind Farm commissioned technical advisors to repair the facility. (Docket No. 1, Ex. 36.) Pursuant to the Professional Consulting Services Agreement, the advisors require access to the facility by September 9, 2019 to perform an assessment. Id. at p. 15.

Wind Farm seeks declaratory relief as to Development Company's rights pursuant to the lease and subordination agreements, and injunctive relief prohibiting Development Company from restricting access to the facility. Id. Wind Farm also sets forth breach of contract, bad faith performance, conversion, and restitution causes of action. (Docket No. 1 at pp. 24-31.) Essentially, Punta Lima and Wind Farm contend that the subordination agreement precludes Development Company from terminating the lease and sublease agreements.

Wind Farm moved for a temporary restraining order, citing the "urgency of obtaining provisional remedy sufficient to allow [Wind Farm] access to the [facility] on September 9, 2019." (Docket No. 2 at p. 37.) Judge Daniel R. Domínguez denied the TRO motion and vacated the September 2, 2019 show cause hearing, however, after Development Company invited Wind Farm and Punta Lima "to coordinate access to the properties." (Docket No. 14 at p. 2.) The Court granted Development Company's motion to consolidate the Punta Lima and Wind Farm litigation. (Case No. 19-1673, Docket No. 25.) Wind Farm filed a second TRO motion, seeking access to the facility on September 9, 2019 for the assessment. (Docket No. 26.)

## II. Legal Standard

A temporary restraining order "is a provisional remedy imposed to maintain the status quo until a full review of the facts

and legal arguments is available." Pro-Choice Network v. Schenck, 67 F.3d 377, 389-99 (2d Cir. 1995). The following four factors govern the Court's TRO analysis: (1) the likelihood that the movant will succeed on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of the relevant equities (*i.e.*, the hardship that will befall the defendants if the TRO issues contrasted with the hardship that will befall Wind Farm and Punta Lima if the TRO does not issue); and (4) the effect of the Court's ruling on the public interest. Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).[1] Irreparable harm "constitutes a necessary threshold showing for an award of preliminary injunctive relief." González-Droz v. González-Colón, 573 F.3d 75, 79 (1st Cir. 2009). "Delay between the institution of an action and the filing of a motion for a preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm." Charlesbank Equity Fund II, Ltd. v. Blinds To Go, Inc., 370 F.3d 151, 163 (1st Cir. 2004) (citation omitted)

Injunctive relief is "a matter for the discretion of the district court and is reversible, of course, only for an abuse of discretion." Id. Temporary restraining orders "must be used

---

[1] Although Planned Parenthood League v. Bellotti, 641 F.2d 1006, concerned a preliminary injunction, courts employ the "same four-factor analysis" to "determine whether to issue a temporary restraining order." OfficeMax Inc. v. County Quick Print, Inc., 709 F. Supp. 2d 100, 106 (D. Me. 2010) (citation omitted).

sparingly and only in cases where the need for extraordinary equitable relief is clear and plain." Northwest Bypass Grp. v. United States Army Corps. of Eng'rs, 453 F. Supp. 2d 333, 338 (D.N.H. 2006) (internal citation and quotation omitted); see Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st Cir. 1981). Wind Farm shoulders the burden of establishing that a TRO is warranted. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996).

**III. Discussion**

A temporary restraining order is inappropriate because Wind Farm has failed to demonstrate irreparable harm. Wind Farm avers that the September 9, 2019 assessment is "crucial to the restoration of the Wind Energy Facility." (Docket No. 26 at p. 32.) Development Company has informed Punta Lima, however, that with "a reasonable communications effort . . . [access to the facility] could be arranged." (Docket No. 29, Ex. 1; see Attachment 1, July 23, 2019 Letter.) Accordingly, Development Company's willingness to coordinate access to the facility obviates the need for a temporary restraining order. The harm set forth in Punta Lima's motion for a TRO is self-inflicted. The parties shall coordinate access to the property, setting aside the acrimonious and obstinate posture that Wind Farm, Punta Lima, and Development company have adopted in this litigation. The parties shall inform

the Court of the time and manner in which Wind Farm and Punta Lima may access the facility on September 9, 2019 **no later than 1:00 PM on September 6, 2019.**

**IV. Order to Show Cause Regarding Diversity Jurisdiction**

Wind Farm and Punta Lima invoke the Court's diversity jurisdiction, alleging complete diversity of citizenship among the parties, and that the amount in controversy exceeds $75,000. (Case No. 19-1673, Docket No. 7 at p. 2; Case No. 19-1800, Docket No. 1 at p. 5) (citing 28 U.S.C. § 1332). Federal courts are courts of limited jurisdiction. Destek Grp. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003). The Court "has an obligation to inquire *sua sponte* into its own subject matter jurisdiction." McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004); Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (noting that the Court "ha[s] the duty to construe [its] jurisdictional grants narrowly") (Besosa, J.).

Wind Farm and Punta Lima shoulder the burden of establishing federal jurisdiction by the preponderance of the evidence. See Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992). To invoke the Court's diversity jurisdiction, Wind Farm and Punta Lima must demonstrate that the amount in controversy exceeds $75,000, and that all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332(a); Álvarez-Torres v. Ryder Mem. Hosp., 582 F.3d 47, 53 (1st Cir. 2009) ("Where it applies, diversity jurisdiction

requires 'complete diversity' of citizenship as between all plaintiffs and all defendants.") (citation omitted).

Punta Lima and Wind Farm are limited liability companies organized pursuant to the laws of Delaware, and have principal places of business in Boston, Massachusetts. (Case No. 19-1673, Docket No. 7 at p. 2; Case No. 19-1800, Docket No. 1 at p. 5.) Development Company is a limited liability company that is incorporated and has a principal place of business in Puerto Rico. Id. The citizenship of a limited liability company "is determined by the citizenship of all of its members." D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 126 (1st Cir. 2011) (internal quotations and citations omitted). The complaints fail to set forth the citizenship of the LLC members. The absence of this information precludes the Court from conducting a complete jurisdictional analysis. Accordingly, Punta Lima and Wind Farm are allowed until **September 23, 2019** to file amended complaints in accordance with this opinion and order. Failure to do so may entail the dismissal of the complaint, without prejudice.

IV. **Conclusion**

For the reasons set forth above, the Court **DENIES** the Wind Farm's motion for a temporary restraining order. (Docket No. 26.) The parties shall inform the Court of the time and manner in which Wind Farm and Punta Lima may access the facility on September 9, 2019 **no later than 1:00 PM on September 6, 2019.** Punta Lima and

Wind Farm are allowed until **September 23, 2019** to file amended complaints in accordance with this opinion and order.  Failure to do so may entail the dismissal of the complaint, without prejudice.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 5, 2019.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE